UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| JAMES ANDREW NICKELS | ) | |
| | ) | |
| V. | ) | NO. 2:13-CV-46 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

<u>REPORT AND RECOMMENDATION</u>

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. This is a judicial appeal of the administrative denial of plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act following and administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Docs. 12 and 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was fifty years of age at the time of his disability onset date of January 1, 2009. He has a limited education, and attended special education classes in school. He has past relevant work experience as a bus driver.

Plaintiff's medical history is summarized in his brief as follows:

> On May 27, 2010, Plaintiff was seen at Frontier Behavioral Health, Constance L. Broce, BS (Tr. 202). During this visit Plaintiff reported that he only wears certain colors of clothes; he hears things outside that are not really there; and if he gets mad at someone, he seems to fixate on that person and what they did, real or imagined (Tr. 202). On June 10, 2010, Plaintiff was given an admitting diagnosis of psychotic disorder NOS; rule out borderline intellectual functioning and schizophrenia (Tr. 202). On June 15, 2010, Plaintiff attended his first actual session at this location (Tr. 201). On June 21, 2010, Plaintiff reported and increase in depression and that he had started hearing voices again (Tr. 199). Plaintiff had referenced being treated at Woodridge in January 1997. These records were obtained and reviewed. It was noted that during this 1997 hospitalization Plaintiff was given a final diagnosis of major depression, severe with psychotic features and avoidant personality disorder (Tr. 199). A Global Assessment of Functioning (GAF) was noted as being 20 on admission and 45 at discharge.
>
> On June 28, 2010, Plaintiff attended a consultative examination with Dr. Krish Purswani (Tr. 183-187). During this examination, Plaintiff reported right eye pain with movement; right hand pain; bilateral hand tingling; and bipolar (Tr. 183). Upon conclusion of the physical examination, Dr. Purswani gave his assessment as right eye pain with movement; right hand pain – without evaluation, diagnosis or treatment; bilateral hand tingling; bipolar; obesity with a BMI of 30.052; hypertension—inadequately controlled; and tobacco abuse (Tr. 186). Dr. Purswani concluded this report with his opinion of Plaintiff's residual functional capacity. This doctor opined to Plaintiff being able to frequently lift 40 pounds 2/3 of the time in an 8 hour day from the floor because of right eye pain with movement, right hand

2

pain and age; being able to stand for 7 hours and walk for 7 hours, for a total of 7 hours in an 8-hour day because of right eye pain with movement, right hand pain and age; and being capable of sitting 8 hours in an 8-hour day (Tr. 186). Additionally, Plaintiff underwent a right hand x-ray as part of this examination (Tr. 187). Based on this x-ray, the impression was given as mild arthritis of the right hand (Tr. 187).

Plaintiff attended a psychological evaluation on June 29, 2010 with Wade Smith, MS, SPE (Tr. 188-194). The evaluation procedures for this examination included a clinical interview with mental status exam, Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and a Wide Range Achievement Test – Fourth Edition (WRAT4). During the course of this evaluation, it was observed that Plaintiff put forth a consistently good effort and the results should be considered valid (Tr. 190). On the WAIS-IV, Plaintiff obtained a full-scale IQ of 69, a verbal comprehension index of 81, a perceptual reasoning index of 73, a working memory index of 74, and a processing speed index of 62 (Tr. 190). On the WRAT4, Plaintiff obtained a word reading standard score of 68 ($2_{nd}$ percentile, with a grade-equivalent of 3.7), a sentence comprehension standard score of 63 ($1_{st}$ percentile, with a grade equivalent of 3.7), and a reading composite standard score of 64 ($1_{st}$ percentile) (Tr. 190). Plaintiff further obtained a spelling standard score of 68 (2nd percentile with a grade equivalent of 3.7) and a math computation standard score of 65 (1st percentile, with a grade equivalent of 3.0) (Tr. 190). The examiner opined that Plaintiff did have a full scale IQ of 69, but never presented as having mental retardation (Tr. 190). A diagnostic impression of borderline intellectual functioning was given. An overall diagnostic impression was given as learning disorder NOS, borderline intellectual functioning and a GAF score of 55 (Tr. 192). The examiner also opined to Plaintiff's concentration and persistence appearing to be adequate to meet the demands of simple or some detailed work-related decisions, but that he may not be able to work quickly enough for some jobs (Tr. 191). The examiner additionally noted that Plaintiff's physical problems may detract from his ability to maintain attendance and meet an employment schedule (Tr. 191).

On July 12, 2010, Plaintiff returned to Frontier Health / Holston Counseling (Tr. 229). Plaintiff reported that the medication, Paxil, has eliminated the auditory hallucinations. Plaintiff returned to this location on September 22, 2010 and reported that "he hasn't been asleep since day before yesterday" (Tr. 227). Plaintiff further reported racing thoughts and an increase in stress due to the health condition of his sister's husband (Tr. 227). Plaintiff was given Seroquel. On October 21, 2010, Plaintiff returned to this location for follow-up and reported the Seroquel and Paxil had helped him to be less irritable and less depressed (Tr. 225). However, Plaintiff did report that he was still struggling with pain.

On November 9, 2010, Plaintiff presented to the Bluff City Medical Clinic to establish care (Tr. 252). At this visit, Plaintiff reported having hypertension and sinus pressure (Tr. 252). Chronic problems were noted as depression, facial surgery, hypertension, and leg surgery. Plaintiff returned on June 3, 2011 for blood pressure check (Tr. 249). Chronic problems were identified as depressive disorder NEC, personal history of tobacco use, allergic rhinitis, and benign essential hypertension

3

(Tr. 249).

        Plaintiff returned to Frontier Health / Holston Counseling on February 2, 2011 (Tr. 243). During this visit, it was noted that he still has some low mood at times but overall appears to be improved with the Paxil and Seroquel (Tr. 243). Plaintiff continued follow-up at this location on April 27, 2011 and July 18, 2011 (Tr. 246-247).

[Doc. 13, pgs. 2-4].

In addition to these, the administrative record also contains the opinions of the state agency physicians and psychologists. On August 9, 2010, Andrew J. Phay, Ph.D, after reviewing the plaintiff's then extant records, including the June 29, 2010 examination by Mr. Smith, assessed the plaintiff's mental capabilities. He found that the plaintiff could understand, remember and carry out simple instructions, as for assistance if needed, and make simple work-related decisions. He stated the plaintiff could maintain attention adequately to work and complete a normal work week "with acceptable performance and productivity for above tasks under normal supervision." He also opined that the plaintiff could maintain regular attendance, be punctual, and sustain an ordinary routine without special supervision. He felt plaintiff could accept instructions and respond to criticism, and work with the public, as well as set goals, avoid hazards and adapt to routine changes in the work environment. [Tr. 219].

At the hearing, the ALJ called Dr. Robert Spangler, a vocational expert ["VE"].He asked Dr. Spangler to assume that an individual closely approaching advanced age, with plaintiff's educational and work background. Dr. Spangler was also asked to assume the person would be restricted to light work; that the person had the ability to perform and maintain concentration for simple, routine, repetitive tasks; and that the person was able to adapt to only gradual and infrequent changes in the work setting. The VE identified

4

5,620,000 which this person could perform in the national economy, and 119,843 in the region. The jobs included "food prep, cafeteria line, dishwasher, janitor, houseman, nonfarm animal care, production machine tender." [Tr. 52].

At this point, the Court would point out that what the transcribing service used at the hearing said the VE said was "at light, simple/routine, if a person could do the full range, which he could not, there's 5,620,000 in the nation..." He emphasized in the next sentence "*and* these are all simple/routine where there's in frequent *[sic]* changes." The phrase "he could not," taken literally, would indicate that the numbers of jobs given were not all jobs the plaintiff could do, but only a person who could do the full range of light work. However, the Court does not believe that this was what the VE meant for two reasons. First, plaintiff's experienced and highly competent counsel did not argue this in his brief, and plaintiff was ably represented by an associate of counsel at the hearing. Second, the clarifying statement that all of those jobs only involved infrequent changes indicates that the VE meant that those were the jobs plaintiff *could do* at his level of performance and concentration.

The plaintiff's attorney then asked the VE if the plaintiff could perform those jobs if plaintiff "may not be quick enough," for some jobs as indicated by the consultative psychological examiner Smith, or if he was limited to "occasional use of the upper extremity." The VE said "if the Court holds that to be credible, there wouldn't be any jobs on a sustained basis." When asked further what would be most relevant, plaintiff's "quickness" or the alleged limitation in use of the upper extremity, the VE stated that it would be Smith's report. [Tr. 53].

In his hearing decision, the ALJ found that the plaintiff had a combination of severe

5

impairments, which were hypertension, obesity, a depressive disorder, a learning disorder, and borderline intellectual functioning. The ALJ, while acknowledging his duty to consider the effects of even non-severe impairments, discussed various other alleged conditions raised by the plaintiff. He found that the plaintiff had received no treatment since reconstructive surgery at the time of the incident for an eye injury sustained in 1992, and had good visual acuity. Plaintiff also alleged a hand injury and pain. The ALJ stated that the injury occurred "10 years ago" and plaintiff had "received no evaluation, diagnosis or treatment." The ALJ also stated that "claimant has had no recent x-rays, and he has not had any hand surgery." The ALJ thus determined that the alleged hand injury and pain did not constitute a severe impairment. Regarding plaintiff's allegations of joint pain, the ALJ also determined there was a total lack of treatment evidence. [Tr. 26].

The ALJ found that the plaintiff had moderate restriction in activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties with concentration, persistence or pace. [Tr. 27].

The ALJ found that the plaintiff had the residual functional capacity ["RFC"] to perform light work, "except limited to: ability to perform simple, routine, repetitive tasks; ability to adapt to gradual and infrequent changes in the work setting; and ability to maintain concentration and persistence for simple, routine, repetitive tasks. [Doc. 28].

He then discussed the plaintiff's severe impairments and the treatment received. He discussed in great detail the consultative examination of Dr. Purswani [Tr. 29] who concluded that with the plaintiff's conditions he could lift 40 pounds from the floor for 2/3rds of an 8 hour workday, stand for seven hours, walk for seven hours, and sit for eight hours in

6

an 8 hour workday [Tr. 29].

The ALJ thoroughly discussed the treatment notes regarding plaintiff's mental impairments from Frontier Health [Doc. 29-30]. He then discussed in great detail the consultative psychological examination by Wade Smith, which was also signed by Dr. David Dietrich, a licensed clinical psychologist [Tr. 188-194]. He noted that "Mr. Smith assessed that the claimant's concentration and persistence appeared adequate to meet the demands of simple or some detailed work-related decisions, but he may not be able to work quickly enough for some jobs." [Tr. 30-31]. He discussed the plaintiff's daily activities. He also discussed the weight assigned to opinions of medical and mental evaluators. He gave great weight to the state agency physicians who evaluated the plaintiff's mental state. He also assigned great weight to Mr. Smith. He gave little weight to the state agency doctors regarding the plaintiff's physical limitations, finding plaintiff more limited than they. He gave some weight to Dr. Purswani, but also found plaintiff more restricted physically. [Tr. 31].

He then found that the plaintiff could not return to his past relevant work as a bus driver. However, based upon Dr. Spangler's testimony, he found that there were a significant number of jobs in the national and regional economies which the plaintiff could perform. Accordingly, he found that plaintiff was not disabled. [Tr. 32-33].

Plaintiff's counsel asserts that the ALJ erred in allegedly failing to consider portions of Smith's opinion, namely that plaintiff may not be able to work "quickly enough for some jobs," and that plaintiff's physical problems "may detract from his ability to maintain attendance and meet an employment schedule." He also asserts that the ALJ erred in not

7

finding a severe hand impairment.

As previously stated, the ALJ discussed Smith's assessment in great detail [Tr. 30-31], including the opinion that plaintiff may not be able to work quickly enough for some jobs. It is also true that the ALJ gave great weight to Smith's assessment, but did not include in his RFC finding or hypothetical to the VE a finding that plaintiff could not work quickly enough for some jobs. The ALJ did not include in his discussion in the opinion any mention of possible hindrance caused by plaintiff's physical problems to his work attendance and performance.

The Court concludes that since the ALJ mentioned, and thus knew of, Mr. Smith's statement regarding plaintiff's ability to be "quick," and yet did not include it in his RFC finding, he rejected that portion of Smith's opinion. In fairness to Smith, it was only a guess on his part, since he used the words "may not be able to" as opposed to "will not." Also, the point was emphasized in cross examination of the VE by plaintiff's counsel, and the ALJ still did not pursue the matter further, which further suggests a rejection of that as a found condition. In any event, the state agency psychologist, to whom the ALJ also gave great weight, did not opine any such limitation. The ALJ is not required to accept all facets of an opinion to which he otherwise gives great weight. This is especially true since the state agency psychologist's opinion provided substantial evidence for the RFC found by the ALJ. This assignment of error is without merit.

As far as Smith's remark about problems that may be caused by plaintiff's physical ailments, this was, at best, clearly beyond his expertise. The ALJ's physical RFC took into account the level of exertional activity that the plaintiff could perform without exacerbating

8

his physical problems.

In this regard, the same is true of the failure to find a severe hand impairment. The ALJ did mistakenly say there was no recent x-ray of the hand, when in fact Dr. Purswani did one as part of his consultative exam of plaintiff. However, Dr. Purswani opined that, in spite of the mild arthritis he saw on the x-ray, the plaintiff could frequently lift 40 pounds two thirds of an 8 hour workday. The ALJ found a physical RFC of much less than this at the light level. Even with some limitation in the plaintiff's hand, he could still lift and carry consistently at the light level. There was an abundance of substantial evidence to support this finding. It was certainly true, as the ALJ stated, that there was no treatment of any hand injury during the period at issue, or otherwise. Even if it could be said that there was error in not finding the hand problem to be a severe impairment, the effects of it was fully accounted for in the assessment of Dr. Purswani, and in the ALJ's finding of light lifting capability.

There was substantial evidence to support the ALJ's findings, and he committed no errors of law. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment be DENIED, and the defendant Commissioner's Motion for Summary Judgment be GRANTED.[1]

Respectfully submitted,

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

s/ Dennis H. Inman
                                                        United States Magistrate Judge